IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MELISSA BROUILLETTE,                    3:11-CV-01336-BR

       Plaintiff,                    OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.

MERRILL SCHNEIDER
Schneider Law Offices
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

       Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

DAVID MORADO
Regional Chief Counsel
HENRY EARNEST VELTE III
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
1301 Young Street, Suite A-702
Dallas, TX 75202-5433
(214) 676-2921

        Attorneys for Defendant

BROWN, Judge.

      Plaintiff Melissa Brouillette seeks judicial review of the
Commissioner of Social Security's final decision denying her
application for Disability Insurance Benefits (DIB) pursuant to
Title II of the Social Security Act, 42 U.S.C. §§ 401-34.  This
Court has jurisdiction to review the Commissioner's final
decision pursuant to 42 U.S.C. § 405(g).

      For the reasons that follow, the Court **REVERSES** the
Commissioner's final decision and **REMANDS** this matter to the
Commissioner for further proceedings.


                    **ADMINISTRATIVE RECORD**

      Plaintiff protectively filed an application for DIB on
June 24, 2009, alleging she has been unable to work since
January 1, 2008, due to fibromyalgia, chronic migraine headaches,
depression, and anxiety.  Tr. 140.


2  - OPINION AND ORDER

On August 28, 2009, Plaintiff's application was denied initially and on December 1, 2009, denied on reconsideration. Tr. 70-73, 76-78.

On January 13, 2011, the ALJ held a hearing on Plaintiff's application at which Plaintiff, a medical expert, and a vocational expert (VE) testified.  Tr. 25-65.

On January 28, 2011, the ALJ issued a written decision that Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 9-20.  On September 14, 2011, the Appeals Council denied Plaintiff's request for review.  Tr. 1-4.  Accordingly, the ALJ's January 28, 2011, decision was the final decision of the Commissioner.

On November 8, 2011, Plaintiff filed her Complaint in this Court seeking review of the Commissioner's final decision.

## BACKGROUND

### I.    PLAINTIFF'S TESTIMONY

As of the January 13, 2011, hearing, Plaintiff was 31 years old.  Tr. 31.  She is single, does not have any children, and lives alone.  Tr. 31.  She needs help preparing meals and lifting anything over "a couple of pounds."  Tr. 32.

Plaintiff is a high-school graduate.  Tr. 32.  In 2002 Plaintiff worked as a store manager in a retail shoe store and a retail tie store.  Tr. 33, 161.  From January 2003 to January

2005 she worked as a mortgage processor full-time for 12 months and then part-time. Tr. 33-34, 161. From January 2005 until October 2008 she was the office manager for a pest-control company. Tr. 34, 161.

Plaintiff was planning to leave her last job earlier than she did because she could not handle the stress. After she learned the pest-control company was planning lay-offs, however, she stayed on until she was laid off in October 2008. Tr. 34. She unsuccessfully looked for work after that date. Tr. 35.

Plaintiff's biggest hurdle in returning to work is anxiety, which causes her to lash out at people. Tr. 35. Her anxiety is caused by "fibro fog," which also causes her to lose her train of thought. Tr. 35.

Plaintiff takes Zomig for migraine pain, Ultram for pain generally, Effexor and Trazadone for depression and to help her sleep, and Xanax "as needed." Tr. 36.

Plaintiff's hands are stiff and sensitive, which makes it difficult for her to touch and/or to grasp things. Tr. 37.

Plaintiff is able to sit for only one hour before she needs to stand and to move around. She can only stand for a short time before needing to lie down. She is unable to reach overhead "most of the time," and her balance and coordination are poor. Tr. 37. On good days she is able to stoop. Tr. 38.

4 - OPINION AND ORDER

During the hearing Plaintiff's pain level was six on a scale of 1-10.  Her pain level rises to eight about five days a week. Tr. 38.  Plaintiff takes 2-3 hour naps every day.  Tr. 38.

Plaintiff also has irritable-bowel syndrome, which interfered with her prior job as an office manager.  Tr. 38.

Plaintiff has serious depression and has been told she is bi-polar.  Tr. 39.  She also suffers from post-traumatic stress disorder (PTSD) because of events that occurred while she was growing up and borderline personality disorder manifested by a violent temper.  Tr. 39.  When she is anxious, she screams at people, locks herself in the bathroom, and cries.  Tr. 39.  She has short-term memory problems, which makes it hard for her to concentrate.  Tr. 40.  As a result, she is able to do only one task at a time.  Tr. 40.

Plaintiff has severe migraine headaches at least twice a week and sometimes loses vision in her right eye.  Tr. 40.

When she was working, Plaintiff missed work once or twice a week.  Tr. 41.

In October 2009 Plaintiff's stepfather passed away. Plaintiff lost 45 lbs because she was too emotionally upset to eat.  Tr. 41.

Plaintiff is able to dress herself "a few days a week" and appropriately groom herself on most days.  Tr. 42-43.

As a store manager Plaintiff was allowed sit and do the paperwork rather than stand, and when she had to stand for long periods, she "would pull out a stool to sit down occasionally. Her employees did the majority of lifting.  Tr. 56.

## II.  LAY-WITNESS EVIDENCE

Plaintiff's sister submitted a report stating the following: she spends 2-3 days a week with Plaintiff.  Plaintiff babysits for her, and the two run errands together.  Plaintiff also cares for her sister's dog and does chores around the home and yard. Tr. 151-52.  Plaintiff sometimes has difficulty sleeping several nights in a row.  Tr. 152.

Plaintiff is capable of taking care of her personal needs and taking her medication.  She is able to do house cleaning and maintenance, to shop, and to get around normally.  Tr. 154.  When she feels well enough, Plaintiff's hobbies are sewing, reading, gardening, and tending to flowers.  Tr. 155.

Plaintiff also conducts bible-study groups and engages in normal activities with friends.  Tr. 155.  She had issues with family and friends when she worked full-time because of stress, anxiety, and irritability.  Tr. 156.  Plaintiff's fibromyalgia affects the full range of her physical activities as well as her memory and concentration.  Tr. 156.  She is capable of understanding and following written instructions well, but sometimes she needs to have oral instructions repeated.  Tr. 156.

6  - OPINION AND ORDER

She does not have any difficulty with authority figures, but she handles stress poorly and becomes irritable, rude, unreasonable, and inconsolable.  Tr. 157.

## III.  MEDICAL TREATMENT EVIDENCE

### A.  Adventist Health Medical Clinic.

In August 2003 Plaintiff was treated for migraine headaches over a four-week period, which caused her to miss several days of work.  Tr. 504. She reported she experienced such headaches since she was 15 years old.  They cause changes in her vision, nausea, and vomiting.  Plaintiff was "positive for a lot of symptoms," including "diarrhea, constipation, bleeding, depression, anxiety," and "double vision."  Tr. 502.

### B.  The Oregon Clinic.

In February 2004 Plaintiff was treated for blood in her stool, which was thought to be caused by either post-infectious irritable-bowel syndrome or inflammatory-bowel disease.  Tr. 497.

### C.  Legacy Mount Hood Medical Center.

In December 2005 Plaintiff was treated for rectal pain. Plaintiff reported "similar symptoms many times previously." Tr. 443.  Plaintiff's past history includes migraine headaches, depression, low-back pain, and Gastroesophageal Reflux Disease (GERD).  Tr. 443.

D.    **Columbia View Family Health Center**.

Beginning in November 2005 Plaintiff was treated primarily for rectal bleeding.  Tr. 345.

By January 2006 she was doing well.  The need for good nutrition was stressed.  Tr. 347.  A week later, however, Plaintiff complained of lightheadedness and shaking, possibly from an adverse reaction to medication.  Tr. 348.  She also began treatment for underlying anxiety and depression.  Tr. 349.

In February 2006 Plaintiff continued to "struggle with symptoms of headache, nausea, vomiting, and anxiety."  Her psychiatric history was reviewed.  Tr. 351.

In March 2006 Plaintiff was doing well and was stable on medication.  She continued to have headaches together with cervical and thoracic strain.  Tr. 355.

In April 2006 Plaintiff continued to experience neck and upper-back pain, anxiety, depression, and a mood disorder. Tr. 357.

In May 2006 Plaintiff had recurring rectal pain with anal fissures.  Tr. 359.

In September 2006 Plaintiff's medication was easing her anxiety, depression, and mood disorder.  She was tired, but she was working diligently on a diet and exercise program.  Tr. 361.

In April 2007 Plaintiff was feeling well and was continuing on her diet and exercise program although she had recently

received a formal diagnosis of fibromyalgia.  Tr. 363.

In July 2007 Plaintiff's anxiety and mood disorder had escalated, and she was having migraine headaches.  Tr. 368. In September 2008, however, Plaintiff's symptoms had been relatively stable for 6-12 months.  Tr. 377.

**E.  <u>Gresham Station Surgery Center</u>.**

In May 2006 Plaintiff underwent an anal sphincterotomy and fissure debridement for recurrent anal bleeding.  Tr. 415.

In December 2006 Plaintiff's symptoms had "again worsened." An upper abdominal sonogram was normal, and there was not any evidence of Cholelithiasis (gallstone disease).  Tr. 404.

In January 2007 Plaintiff's gallbladder was removed. Tr. 399.

**F.  <u>Providence Arthritis Center</u>.**

In December 2006 Plaintiff was evaluated for possible lupus resulting in "generalized pain [in her] joints, muscles and skin."  She felt "as if she had been rubbed by sandpaper."  She had pain in her neck, shoulders, and low back; periodic sharp pain in her abdomen and chest; and a "constant headache" for the past 12 years varying in intensity.  She was also experiencing nausea, vomiting, diarrhea and constipation, and a lack of appetite resulting in a weight loss of 45 lbs.  She had night sweats, but her feet and toes were always cold.  Plaintiff also reported she had previously been diagnosed with depression and

bipolar disease and had considered but not attempted suicide.
Tr. 551.

Plaintiff was diagnosed with chronic diffuse pain with
myofascial tenderness, sleep disturbance, depression, anxiety,
and migraine headaches consistent with fibromyalgia.  Tr. 552.

IV.   **MEDICAL/PSYCHOLOGICAL EXAMINATION EVIDENCE**

A.   **John D. Adler, Ph.D. – Licensed Psychologist**.

In July 2009 Dr. Adler performed a psychodiagnostic
evaluation of Plaintiff on behalf of the Commissioner.  Tr. 255.

Plaintiff reported she had been unable to "handle" the
"daily anxiety" of work since 2003-2004.  Although she described
her work impairment as "due to some physical factors," her
"primary complaints were mental."  Dr. Adler opined Plaintiff
"does have significant impairment, mostly with anxiety and
coping, resulting in avoidance behaviors both while working [and]
since working."  Her daily functioning as to "chores, handling
money and self-care" was "decent" even though "she claimed
physical health problems with these functions."  Her "[c]ognitive
skills also did not seem to be a major problem," but "there was
evidence of both anxiety and depression."  Tr. 257.

B.   **Tatsuro Ogisu, M.D. – Physical Medicine**.

In August 2009 Dr. Ogisu examined Plaintiff on behalf of the
Commissioner.  He noted Plaintiff was well-groomed and made
a good effort.  She was "alert and cooperative" and "lacked

energy," but she did "not appear to fatigue" during the examination.  Tr. 277.

Dr. Ogisu diagnosed Plaintiff as having fibromyalgia and a history of migraine headaches.  He opined Plaintiff should be able to sit for up to six hours; to stand and to walk on level surfaces for at least half the time during an eight-hour workday, and to lift up to ten lbs "or a little more" occasionally.  Tr. 278.  Her "tolerance for work-related activities," however, would be "expected to vary from day to day depending on the status of her fibromyalgia and migraines."  Tr. 278.

## V.    MEDICAL/PSYCHOLOGICAL CONSULTATION EVIDENCE

### A.    Neal E. Berner, M.D. - Family Medicine.

On reviewing Plaintiff's medical records, Dr. Berner opined Plaintiff is capable of lifting ten lbs frequently; standing and walking for at least two hours in an eight-hour day; sitting for at least six hours in an eight-hour day; pushing/pulling without limitation; climbing ramps/stairs frequently; and balancing, stooping, kneeling, crouching, and crawling occasionally. Tr. 287.

Plaintiff has limited handling ability, but she does not have any manipulative, visual, communicative, or environmental limitations.  Tr. 288-89.

Dr. Berner opined Plaintiff's impairments were "more than nonsevere," but they did not meet a Listing.  Tr. 292.  He also

11 - OPINION AND ORDER

opined Plaintiff does have "some limitation" from fibromyalgia,
fatigue symptoms, and migraine headaches, but not to such "a
severe degree to prevent [] all work activity."  Tr. 292.

**B.  Lawrence Duckler, M.D. - General Surgeon**

Dr. Duckler testified at the hearing before the ALJ that he
was head of the Department of Occupational and Industrial
Medicine at Kaiser for 20 years.  Tr. 43.  He has treated
physical and psychiatric impairments in that capacity.  Tr. 44.

Dr. Duckler summarized Plaintiff's medical records, her
personal history, and her occupational background.  Tr. 48.

He opined Plaintiff's impairments do not meet any Listings.
He agreed with the opinion of examining physician Tatsuro Ogisu,
M.D., that Plaintiff is able to sit for six hours in an eight-
hour workday, to stand and to walk on level surfaces for short
periods at least half of a workday; to lift up to ten pounds;
and to handle objects on an occasional, nonrepetitive basis.
Tr. 48, 278.

Dr. Duckler also agreed with Dr. Ogisu that Plaintiff
becomes incapacitated when her symptoms escalate.  Tr. 48, 278.
Dr. Duckler deferred to Dr. Ogisu's opinion rather than to the
opinions of consulting Disability Determination Services (DDS)[1]

---

[1] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a).

12 - OPINION AND ORDER

physicians that Plaintiff was only able to handle objects on an
occasional rather than a frequent basis.   Tr. 49.

Dr. Duckler agreed with DDS physicians who extrapolated
from the report of Dr. Adler that Plaintiff, "by subjective
implication," suffers from nonsevere anxiety and depression.
Tr. 49, 272.

**VI.   VE TESTIMONY**

The VE testified Plaintiff's job as a store manager was a
light-skilled occupation and her jobs as a mortgage-loan
processor and office manager were sedentary-skilled occupations.

The VE opined Plaintiff would be able to perform her past
work as an office manager if her RFC was limited to an RFC that
requires only sedentary lifting, standing, and walking for short
distances at a time; frequent gripping and grasping; occasional
climbing of ramps and stairs; stooping, kneeling, crouching, and
crawling, and handling of objects; and standing/walking up to
four hours in an eight-hour workday.

The VE also testified if Plaintiff is also limited to
simple, routine, repetitive work, she would not be able to
perform any past relevant work, Tr. 58-59; if she is limited
to occasional superficial public contact, she would only be able
to manage an office with one or two employees, Tr. 62; and if she
were absent from work two or more days each month, she would not
be able to engage in substantial gainful activity.   Tr. 63.

13 - OPINION AND ORDER

## STANDARDS

The initial burden of proof is on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must prove her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or

detracts from the Commissioner's decision.  *Robbins,* 466 F.3d
at 882.  The Commissioner's decision must be upheld even if
the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart,* 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of
the Commissioner.  *Widmark v. Barnhart,* 454 F.3d 1063, 1070
(9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue,* 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. § 404.1521.  Each step is potentially
dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.,* 454 F.3d
1050, 1052 (9th Cir. 2006).  *See* 20 C.F.R. § 404.1521.

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout,* 454
F.3d at 1052.  *See also* 20 C.F.R. § 404.1521(a)(4(ii).

15 - OPINION AND ORDER

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed Impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 416.920(a)(4)(iii). Criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P. Appendix I (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.1520(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). Assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v).

Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## THE ALJ'S FINDINGS

In Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 10, 2008, the alleged onset date of her disability. Tr. 11.

In Step Two, the ALJ found Plaintiff at all material times has had severe fibromyalgia and migraine headaches. Tr. 11.

In Step Three, the ALJ found Plaintiff's impairments do not

meet or equal any listed impairment.  The ALJ found Plaintiff has the RFC to perform sedentary work in which she is able to sit for six hours in an eight-hour work day; to stand/walk for short distances for up to four hours; occasionally to climb ladders, ramps, stairs, ladders, ropes, and scaffolds; occasionally to balance, stoop, kneel, crouch and crawl; and occasionally but not repetitively to handle and to frequently grip and grasp.  Tr. 14.

Based on these findings, the ALJ concluded Plaintiff was able to perform her past relevant sedentary work as an office manager.  Tr. 19-28.  Accordingly, the ALJ found Plaintiff is not disabled and is not entitled to benefits.  Tr. 20.  As a result, the ALJ did not make findings at Step Four and Step Five.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) not giving Plaintiff an adequate administrative hearing, (2) inadequately assessing Plaintiff's credibility; and (3) inadequately evaluating Plaintiff's RFC.

## I.   ADEQUACY OF ADMINISTRATIVE HEARING

Plaintiff contends the administrative hearing was inadequate because the ALJ (a) did not issue a subpoena to Plaintiff's former work supervisor for his testimony; (b) did not allow an opening and/or closing statement by Plaintiff's representative;

and (c) did not allow Plaintiff's lay witness to testify.

**A.   Standards.**

Social Security claimants are entitled to a measure of due process at their administrative hearings.  The "procedure at the hearing generally . . . shall be in the discretion of the hearing examiner and of such nature as to afford the parties a reasonable opportunity for a fair hearing."  Accordingly, "[t]he hearing should be liberal and not strict in tone and operation.  This is the obvious intent of Congress so long as the procedures are fundamentally fair."  *Richardson v. Perales*, 402 U.S. 389, 401-02 (1971).  "When it is reasonably necessary for the full presentation of a case, an administrative law judge . . . may at the request of a party, issue subpoenas for the appearance and testimony of witnesses [pertaining to an issue] that [is] material to an issue in the hearing."  20 C.F.R. § 404.950(d)(1).

**B.   Analysis.**

**1.   Request for a Subpoena.**

On December 20, 2010, more than three weeks before the hearing before the ALJ, Plaintiff wrote to the Commissioner requesting a subpoena to be issued to her former manager requiring him to attend the hearing and to explain the circumstances as to why Plaintiff was unable to continue working at her last job before she filed her claim for DIB.

19 – OPINION AND ORDER

At the hearing the ALJ addressed Plaintiff's request
for the issuance of a subpoena and recommended she obtain a
written statement from her former manager to be made part of the
record rather than using a subpoena.  Plaintiff asserted
the witness was worried that his boss would find out.  The ALJ
then reassured Plaintiff that her file, with such statement in
it, would not be made public.  Plaintiff responded "okay."
Tr. 31.  Plaintiff's former manager, however, never provided
to the Commissioner the evidence that Plaintiff sought from him
regarding her work performance and the reasons she left her job.

The record clearly reflects the ALJ's adverse finding
as to Plaintiff's credibility was based on several factors, one
of which was her work performance in her last job.  The ALJ noted
Plaintiff had "testified that her boss allowed her to miss two
days of work each week, lock herself in the bathroom, and sleep
during the day; yet, she also reported being able to do her work
tasks very well and having the best administrative numbers in
the company."  Tr. 16.  The ALJ relied on this evidence as a
significant factor in finding that Plaintiff's testimony was not
entirely credible at least as to the alleged negative aspects of
her ability to perform her job.

The Court concludes further development of the record
to obtain a statement by subpoena from Plaintiff's last manager

as to Plaintiff's ability to perform the tasks assigned to her in
the weeks or months before she left her job would likely shed
light on Plaintiff's credibility and her ability to perform that
job (as past relevant work) in the future.

On this record, the Court concludes the ALJ erred when
he failed to provide Plaintiff with a full and fair opportunity
at the hearing to present all the facts supporting her claim,
including evidence from her former manager regarding her job
performance as office manager, the impact of her impairments on
that performance, and the reason she left her job.

### 2.  Denial of Opening and Closing Statement.

Plaintiff asserts the ALJ erred when she failed to
allow her representative to make an opening and/or closing
statement.  Specifically, Plaintiff asserts her representative
should have had the opportunity to explain that Plaintiff had
only been able to function in her daily activities because she
was unemployed without the stress of work.  Plaintiff, however,
has not shown that she was prejudiced, particularly since her
representative questioned her on direct examination and had the
opportunity to elicit any relevant testimony Plaintiff had to
offer, including the reasons why Plaintiff was able to function
daily more effectively when she was unemployed than when she was
employed.  Moreover, before closing the hearing, that ALJ advised
Plaintiff and her representative before closing the hearing they

21 - OPINION AND ORDER

On this record the Court finds Plaintiff has not presented any facts to suggest that the ALJ abused her discretion when she suggested that "if we have witnesses, why don't we have them submit statements and if you like to submit a closing in writing, I will look for that as well." Tr. 64. The record does not reflect Plaintiff availed herself of that opportunity as to this particular witness.

In summary, the Court concludes the ALJ erred when she failed to allow Plaintiff the opportunity to obtain evidence by means of a subpoena issued to her former manager.

## II.   PLAINTIFF'S CREDIBILITY

The ALJ found Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her physical and mental-health impairments not credible because it was inconsistent with the medical records, her daily living activities, and her work history.   Tr. 26.

### A.   **Standards**.

In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:   The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could

---

record.   Tr 148-58, 206-26.   The ALJ considered these statements, and Plaintiff has not objected to the conclusions the ALJ drew from them.

reasonably be expected to produce some degree of symptoms.   The
claimant, however, need not produce objective medical evidence of
the actual symptoms or their severity.   *Smolen,* 80 F.3d at 1284.
If the claimant satisfies the above test and there is not any
affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if she provides clear and
convincing reasons for doing so.   *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester,* 81 F.3d at 834)).   General
assertions that the claimant's testimony is not credible are
insufficient.   *Id.*   The ALJ must identify the testimony that is
not credible and the evidence that undermines the claimant's
complaints.   *Parra,* 481 F.3d at 750 (quoting *Lester,* 81 F.3d at
834).

**B.   Analysis.**

Plaintiff argues the ALJ did not give clear and convincing
reasons to support her finding that Plaintiff's testimony was not
credible as to the severity of her impairments, particularly in
light of her daily living activities and work history.

The record, however, reflects the ALJ listed numerous
reasons for not fully crediting Plaintiff's testimony and
statements regarding the severity and extent of her impairments.

The ALJ primarily focused, however, on Plaintiff's self-
described limitations in her daily activities including, *inter
alia,* her inability to get out of bed sometimes, difficulty using

24 - OPINION AND ORDER

her hands and lifting anything weighing more than ten lbs, taking care of her personal grooming, and needing to lay down much of the time.  The ALJ asserted Plaintiff's description is not supported by the evidence.

As noted, Plaintiff's sister stated in a daily-living activity report that Plaintiff was able to perform significant daily activities, including taking care of her personal needs, taking her medication, cleaning and maintaining her home, shopping, getting around normally, for the most part handling changes in routine appropriately, and caring for a child two days a week.

The Court finds this evidence tends to contradict Plaintiff's testimony.  Thus, the Court concludes the ALJ did not err when she found Plaintiff's testimony not credible as to the severity of her impairments and their impact on her ability to engage in substantial gainful activity because the ALJ provided clear and convincing reasons for doing so.

## III. PLAINTIFF'S RFC - PHYSICAL IMPAIRMENTS

Plaintiff contends the ALJ erred by finding Plaintiff retained the RFC to perform her past relevant work as an office manager because the ALJ did not adequately include in Plaintiff's RFC any limitations relating to Plaintiff's ability to lift, climb, stoop, kneel, and crouch as well as to handle, grip, and grasp objects.

Plaintiff contends her job as an office manager required her to climb for one hour; stoop for two hours; kneel for two hours, crouch for one hour; and spend one hour of handling, gripping, and grasping as reflected in the July 11, 2009, Disability Report that Plaintiff completed long before the hearing in this case. Tr. 141.  At the hearing, however, Plaintiff testified she was "allowed the opportunity to sit" and do the paperwork rather than to stand, and when she had to stand for long periods, she "would pull out a stool to sit."  Moreover, her employees did the majority of any lifting that was required.  Tr. 56. Plaintiff herself lifted less than ten lbs on a frequent basis. At the hearing the ALJ incorporated a "sedentary lifting" requirement in her evaluation of Plaintiff's RFC and included the requirement in her hypothetical to the VE.

On this record the Court concludes the ALJ did not err on this ground when she evaluated Plaintiff's RFC nor in the hypothetical she posed to the VE.

## IV.  PLAINTIFF'S RFC - PSYCHOLOGICAL IMPAIRMENTS

Plaintiff contends the ALJ did not adequately account for Plaintiff's psychological impairments when she determined Plaintiff's RFC.

Dr. Adler examined Plaintiff on behalf of the Commissioner and opined Plaintiff "does have significant impairment, mostly with anxiety and coping, resulting in avoidance behaviors both

while working [and] since working."  The ALJ, however, merely

noted Dr. Adler's comment that Plaintiff's twitching improved

over the course of his "interview" with her.  Tr. 16.

The Court concludes the ALJ erred by performing only a

cursory analysis of Dr. Adler's opinion and by failing to address

other evidence in the record that establishes Plaintiff was

diagnosed with depression, anxiety, and stress, particularly in

the workplace, when the ALJ was evaluating Plaintiff's RFC.


### REMAND

The decision whether to remand this case for further

proceedings or for the payment of benefits is a decision within

the discretion of the court.  *Harman v. Apfel*, 211 F.3d 1172,

1178 (9th Cir. 2000).

The Ninth Circuit has established a three-part test "for

determining when evidence should be credited and an immediate

award of benefits directed."  *Id.*  The court should grant an

immediate award of benefits when:

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting . . .
> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.*  The second and third prongs of the test often merge into a

single question:  Whether the ALJ would have to award benefits if

27 - OPINION AND ORDER

the case were remanded for further proceedings.  *Id.* at 1178 n.2.

The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence*. Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

Based on the record in this case, the Court, in the exercise of its discretion, concludes this matter should be remanded to the Commissioner for further proceedings.

Accordingly, the Court **REMANDS** this matter to the Commissioner for further proceedings in which the Commissioner shall (1) issue a subpoena for testimony or otherwise obtain evidence from Plaintiff's former workplace manager regarding her job performance as office manager, the impact of her impairments on that performance, and the reason she left her job; (2) reevaluate Plaintiff's psychological impairments; and (3) based on the above, reevaluate Plaintiff's residual functional capacity (RFC) and her ability to engage in substantial gainful activity.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner for

28 - OPINION AND ORDER

further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 10th day of October, 2012.

_____
ANNA J. BROWN
United States District Judge

29 - OPINION AND ORDER